IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STACEY TATROE,

      **Plaintiff,**

  v.

COBB COUNTY, GEORGIA, et al.,

      **Defendants.**

        1:04-cv-1074-WSD

## OPINION AND ORDER

The matter is before the Court on the Motion for Reconsideration [88] filed by Plaintiff Stacey Tatroe ("Plaintiff") and on Plaintiff's Motion to Reopen Discovery [89].

## I. INTRODUCTION AND FACTUAL BACKGROUND

This is an action under Section 1983 in which Plaintiff alleges her former employer (Defendant Cobb County) and her former supervisor (Defendant Wheeler) retaliated against her for constitutionally-protected speech in violation of the First and Fourteenth Amendments.

The Cobb County 911 Communications Bureau (the "Bureau") is a branch of the Cobb County Department of Public Safety. Within the Bureau, emergency communications operators report to shift supervisors, who report to lead

supervisors, who report to the Assistant Manager, who reports to the Manager. The

Bureau Manager is the top administrator within the Bureau.  He or she reports to

the Director of the Department of Public Safety, who reports to the County

Manager, who in turn reports to the Board of Commissioners.  The Board of

Commissioners (the "Board") is the governing body of Cobb County.

Joe Lee Thompson served on the Board as Commissioner for District Two.

Since January 2003, Commissioner Thompson had been designated to serve as the

Board's representative with respect to the Department of Public Safety.  Mickey

Lloyd has served as Director of the Department of Public Safety since February

2003.  Tony Wheeler ("Wheeler") is the current Bureau manager, and has served in

this capacity since 1999, with the exception of time spent performing military

service in Afghanistan from July 2002 through August 2003.  During Wheeler's

absence, Ann Flynn ("Flynn") served as acting Bureau Manager and Bonnie

Rogers ("Rogers") served as acting Assistant Manager.  At all other times relevant

to this action, Flynn served as the Assistant Manager and Rogers served as a lead

supervisor within the Bureau.

Plaintiff began her employment with the Bureau as an emergency

communications operator in 1996.  Prior to the events at issue in this case, she had

received excellent performance evaluations and had not received any formal

discipline.  On or about January 20, 2003, Plaintiff wrote a letter to Commissioner

Thompson (the "Thompson Letter") expressing her concern regarding an alleged

manpower crisis at the Bureau.  The letter was critical of Bureau management and

stated that the alleged manpower shortage was placing at risk the public, police

officers, and firefighters served by the Bureau.  Plaintiff copied a number of

government officials on the Thompson Letter, including higher-level officials

within the Bureau, such as then-Manager Flynn and officials within law

enforcement agencies served by the Bureau, such as Lee New, then Cobb County

Police Chief, Bobby Moody, Marietta Police Chief, and Rebecca Denlinger, Cobb

County Fire Department Chief.  A few days later, the letter was received by the

Marietta Daily Journal from some unknown source, and parts of it were quoted in a

January 26, 2003 article regarding the Bureau.

Approximately one week later, Bureau Manager Flynn spoke to Plaintiff

about the Thompson Letter.  Flynn told Plaintiff she did not dispute the content of

the Thompson Letter or Plaintiff's right to raise the issues addressed in the letter.

Flynn advised Plaintiff, however, that the letter violated the Bureau's written

"Chain of Command" Policy.  The policy provides that all employees are required

to follow the supervisory chain of command when addressing department matters; in other words, under the policy, an employee with a grievance relating to a department matter must first attempt to resolve the issue with his or her immediate supervisor before raising the issue with higher-ranking Bureau officials or going outside the Bureau.  On February 4, 2003, Plaintiff received a so-called Critical Incident Reminder ("CIR").  The CIR advised Plaintiff that she violated the Chain of Command Policy when she sent the Thompson Letter to officials outside the Bureau without first discussing her concerns within it.

Plaintiff alleges that she was subject to several disciplinary actions in the year and eight months following her publication of the Thompson Letter.  She claims these actions were imposed by Bureau officials in retaliation for expressing her concerns about a manpower crisis at the Bureau.  Ultimately, Plaintiff resigned her employment with the Bureau in October 2004.  Although she contends that she had no choice but to leave the Bureau as a result of the Defendants' actions, it is undisputed that Plaintiff was not discharged or threatened with discharge by her superiors, nor was she told to quit or encouraged to do so by either her superiors or her co-employees.

Plaintiff filed her Complaint on April 19, 2004 [1].  In it, she asserts claims for First Amendment retaliation under Section 1983 against Cobb County and against Wheeler, Flynn and Rogers (collectively, the "Individual Defendants"), in their individual and official capacities.

On March 7, 2006, the Court granted in part, and denied in part, a Motion for Summary Judgment filed by the Defendants [57] (the "March 7 Order").  After reviewing the then-applicable standards for prevailing on a First Amendment retaliation claim under Section 1983, the Court determined that several of the actions alleged in the Complaint did not qualify as an "adverse employment action" sufficient to support a First Amendment retaliation claim.  The Court also determined that Plaintiff was not "constructively discharged," and that Plaintiff could not state a valid claim against defendants Flynn and Rogers because neither of them took an "adverse employment action" against her.  The Court also ruled that defendant Wheeler was not entitled to qualified immunity for the actions alleged against him.[1]

---

[1]  Plaintiff's claim under Georgia law for tortious interference with business relations, alleging that Defendants induced Plaintiff's prospective employer to deny her application for employment, also was dismissed.

On April 5, 2006, Defendants Cobb County and Wheeler appealed the Court's ruling denying qualified immunity to defendant Wheeler [58].[2]  On March 29, 2007, the Eleventh Circuit Court of Appeals affirmed the Court's denial of qualified immunity [73].

On October 9, 2007, Plaintiff moved for reconsideration of the March 7 Order in light of the Supreme Court's decision in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (June 22, 2006) [88].

On October 11, 2007, Plaintiff notified the Court of the Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951 (May 30, 2006), and sought to re-open discovery on certain issues [89].

## II.    DISCUSSION

### A.    The Standard on a Motion for Reconsideration

The Court does not reconsider its orders as a matter of routine practice.  LR 7.1E, NDGa.  A motion for reconsideration is appropriate only where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.  Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999); Pres. Endangered Areas of

_____

[2]  Cobb County voluntarily dismissed its appeal on June 14, 2006 [64].

Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D.

Ga. 1995), aff'd 87 F.3d 1242 (11th Cir. 1996).  A motion for reconsideration

should not be used to present the Court with arguments already heard and

dismissed, or to offer new legal theories or evidence that could have been

presented in the previously-filed motion.  Bryan v. Murphy, 246 F. Supp. 2d 1256,

1259 (N.D. Ga. 2003); see also Pres. Endangered Areas, 916 F. Supp. at 1560 ("A

motion for reconsideration is not an opportunity for the moving party and their

counsel to instruct the court on how the court 'could have done it better' the first

time.").  Supreme Court decisions representing a change in the law are applied to

all cases pending on direct review, regardless of whether the events at issue predate

the intervening decision.  Harper v. Va. Dept. of Taxation, 509 U.S. 86, 97 (1993)

("When this Court applies a rule of federal law to the parties before it, that rule is

the controlling interpretation of federal law and must be given full retroactive

effect in all cases still open on direct review and as to all events, regardless of

whether such events predate or postdate our announcement of the rule.").

**B.**     <u>**Timeliness of the Motion for Reconsideration**</u>

The Defendants argue that Plaintiff's Motion for Reconsideration is

untimely and should be ignored.  The Court normally requires motions for

reconsideration to be filed within ten days of the Court's Order or within ten days

of the intervening change in the law justifying reconsideration.  LR 7.1E, NDGa.

The Supreme Court decided <u>Burlington</u> on June 22, 2006, while Defendants'

appeal of the Court's qualified immunity ruling was pending before the Eleventh

Circuit.  The Court also follows its pretrial scheduling orders, absent a justifying

reason to depart from its scheduling directions.

On March 29, 2007, the Eleventh Circuit affirmed the Court's ruling, and at

that time Plaintiff could have moved for reconsideration of the Court's order in

light of <u>Burlington</u>.  If the motion was filed within ten days of the Eleventh

Circuit's decision, the filing would have been within the time allowed by the

Court's Local Rules.[3]  Instead, Plaintiff moved for reconsideration on October 7,

---

[3] The Court notes that, on July 27, 2007, the parties submitted their consolidated proposed pretrial order stating: "There are no motions or other matters pending for consideration by the Court except . . . The parties may file motions in limine prior to trial." [78] at 1.

-8-

2007, seven months after the Local Rule deadline for filing a motion for reconsideration.

In this case, Plaintiff unreasonably delayed the filing of her motion for reconsideration without explaining the reason for the delay.  The result has been a disruption in the order and efficient processing of this case.  For this reason, the Court considered denying the untimely reconsideration request.  However, the Court recognizes that it ultimately will be required to consider the impact of the Supreme Court's recent decisions in <u>Burlington</u> and <u>Garcetti</u> on this case.  <u>Harper</u>, 509 U.S. at 97.  Considerations of judicial economy, which the Court's Local Rules and the time limits contained in them are designed to further, counsel toward applying applicable law at the earliest possible time.  For this reason only, the Court will consider the reconsideration motion.

**C.    <u>Garcetti's Applicability to this Action</u>**

Plaintiff argues that the Supreme Court's recent decision in <u>Garcetti v. Ceballos</u>, 126 S. Ct. 1951 (2006), applies to this case.  The Court disagrees that <u>Garcetti</u> affects this Court's prior rulings on the scope of the First Amendment issues.

Prior to the Garcetti decision, the Eleventh Circuit applied the well-established test that for a public employee to establish a *prima facie* case of First Amendment retaliation, she must show, among other things, that her "speech can fairly be characterized as relating to a matter of public concern." Akins v. Fulton County, Ga., 420 F.3d 1293, 1303 (11th Cir. 2005), cert. denied 546 U.S. 1095 (2006). The Supreme Court's decision in Garcetti clarified what speech should be characterized as relating to a matter of public concern. "In Garcetti, the Supreme Court emphasized that a public employee must speak both on a matter of public concern and as a citizen to be protected under the First Amendment." D'Angelo v. School Board of Polk County, Fla., 497 F.3d 1203, 1209 (11th Cir. 2007). The Supreme Court has determined that public employees who make statements pursuant to their official duties do not speak as citizens. Garcetti, 126 S. Ct. at 1960 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."); D'Angelo, 497 F.3d at 1209.

Plaintiff argues the Court should consider Garcetti's revised standards and apply them to this case, and Plaintiff claims she is entitled to reopen discovery on

whether she spoke as a citizen on a matter of public concern.  The Defendants respond that although <u>Garcetti</u>'s revised test applies in this Circuit, application of the revised test to this case does not impact the case or the issues to be tried.  The Court agrees.  Plaintiff's case is based on allegedly unconstitutional retaliation against her as a result of the Thompson Letter.  The Defendants have not argued that Plaintiff's letter was written pursuant to her official job duties.  Indeed, the Defendants concede that the Thompson Letter constituted speech involving a matter of public concern.  Order [57] at 27.  The Court will not create a dispute where one does not exist.  Applying <u>Garcetti</u> to this case, Plaintiff has made a *prima facie* showing that she spoke as a citizen on a matter of public concern, and the Defendants agree.  Plaintiff's motion to re-open discovery is moot, and the motion to re-open discovery is denied.[4]

### D.   <u>The Burlington Case's Applicability to First Amendment Retaliation Claims</u>

"For a public employee to establish that an employer conditioned her job in a way that burdened a constitutional right impermissibly, the employee must first

---

[4] The Court notes that <u>Garcetti</u> casts further doubt on whether the claims asserted by Plaintiff will prevail at trial.

demonstrate that the asserted right is protected by the Constitution and that he or she suffered an 'adverse employment action' for exercising the right." Akins, 420 F.3d at 1300 (internal quotation marks omitted). The Eleventh Circuit has defined "adverse employment action" in First Amendment retaliation cases to mean that "'the complained-of action must involve an important condition of employment.'" Akins, 420 F.3d at 1300 (quoting Stavropoulos v. Firestone, 361 F.3d 610, 619 (11th Cir. 2004), cert. denied 544 U.S. 976 (2005)). "[A]s a matter of law, important conditions of employment include discharges, demotions, refusals to hire or promote, and reprimands." Akins, 420 F.3d at 1300. The Court initially applied the standards from Stavropoulos and Akins to determine whether the actions about which Plaintiff complained involved an "important condition of employment." In applying these standards, the Court found that several actions did not meet the then-existing standards and thus failed to adequately state claims for First Amendment retaliation. Order [57] at 10.

On June 22, 2006, the Supreme Court decided Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), which Plaintiff argues changed the Eleventh Circuit's standard of what constitutes an "adverse employment action." The Supreme Court considered whether the anti-retaliation provision of Title VII of the

Civil Rights Act of 1964 confined actionable retaliation to activity that affects the terms and conditions of a person's employment, or whether the provision encompassed broader activities. Burlington, 126 S. Ct. at 2408. The Supreme Court analyzed the textual differences between the anti-discrimination provision of Title VII, 42 U.S.C. § 2000e-2(a), and the anti-retaliation provision of Title VII. Id. § 2000e-3(a). In doing so, the Court determined that the anti-discrimination provision contained several limiting phrases not found in the anti-retaliation section. Based on those distinctions, the Supreme Court determined that the anti-retaliation provision's prophylactic goals would be best served by not limiting its scope solely to activities taken against employees within the workplace. Burlington, 126 S. Ct. at 2412 ("An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace.").

The Supreme Court then analyzed the scope of the anti-retaliation provision. Similar to First Amendment retaliation actions, a claim for Title VII retaliation requires the plaintiff to show that an "adverse employment action" was taken against him or her. Id. at 2410. Consistent with the broader scope of the anti-retaliation provision, the Supreme Court redefined "adverse employment action" in

the context of Title VII retaliation claims.  The Court held: "In our view, a plaintiff

must show that a reasonable employee would have found the challenged action

materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination."  Id. at

2415 (internal citations and quotation marks omitted).

Plaintiff argues that the Burlington case's revised standard for "adverse

employment action" should apply equally in determining what constitutes an

"adverse employment action" in First Amendment retaliation cases.  The

Defendants argue that because Burlington is itself limited to Title VII cases, the

Supreme Court's new standard does not apply here.  The Court agrees with

Plaintiff.

The Eleventh Circuit has applied and interpreted Burlington's new standard

several times in cases alleging retaliation claims under Title VII.  None of these

cases involved applying Burlington to First Amendment retaliation claims.  E.g.,

Myers v. Cen. Fla. Invs., Inc., 237 Fed. App'x 452, 457 n.3 (11th Cir. 2007);

Bussell v. Motorola, Inc., 228 Fed. App'x 832 (11th Cir. 2006); Cain v. Geren, No.

07-12929, 2008 WL 64007, at *1 (11th Cir. Jan. 7, 2008).  The parties have not

identified, and the Court has not found, any Eleventh Circuit case applying Burlington to a First Amendment retaliation claim under § 1983.

In the absence of Eleventh Circuit precedent, the Court looks to opinions of this Court and other courts in this Circuit. In an action in the United States District Court for the Middle District of Florida, the Court determined that the Burlington definition of "adverse employment action" applied to First Amendment retaliation cases. Sharp v. City of Palatka, No. 3:06-cv-200-J-TEM, 2008 WL 89769, at *2 (M.D. Fla. Jan. 5, 2008). The Court noted that retaliation claims under both Title VII and the First Amendment seek to prevent harm to individuals on the basis of fundamental constitutional rights. The Court reasoned that the breadth of action appropriate for consideration in a Title VII retaliation case was equally appropriate to apply to protect First Amendment speech rights. Id. This approach is consistent with the analytical approach of the Eleventh Circuit, which has favorably compared the standards for "adverse employment action" under both Title VII and § 1983 First Amendment actions. "While we have not explicitly equated [the "adverse employment action" element of First Amendment retaliation claims] with Title VII's adverse employment action requirement, we regularly draw cases applying this rule to inform our analysis of Title VII retaliation

claims . . . .   This is because the standards are consonant."  <u>Stavropoulos</u>, 361 F.3d

at 619.

This Court believes <u>Burlington</u>'s definition of "adverse employment action"

in the Title VII context should apply equally to retaliation actions under the First

Amendment.  The anti-retaliation provision of Title VII and a First Amendment

retaliation claim both seek to further the same goals – preventing retaliatory actions

against individuals who seek to assert constitutional rights.  Actions under both

Title VII and the First Amendment require plaintiffs to show an "adverse

employment action" taken against them as a result of their assertion of

constitutional rights.  Given that the Eleventh Circuit has already stated that the

standards for "adverse employment actions" are "consonant" – if not

interchangeable – the Court applies <u>Burlington</u> to this case.

### E.       Reconsideration of the Order on Summary Judgment

Plaintiff seeks reconsideration of the Court's previous opinion that ten

complained-of actions did not constitute "adverse employment actions."  These

actions are:

1.  The February Critical Incident Reminder ("CIR") Plaintiff received for violating the Chain of Command Policy with respect to the Thompson Letter.

2.  The February 14, 2003 letter Plaintiff received from Flynn concerning the Thompson Letter.

3.  The March 15, 2003 CIR Plaintiff received for violating the Chain of Command Policy with respect to her request to meet with Director Lloyd.

4.  March 2003 inquiries made to other employees regarding Plaintiff's statements made during the March 2003 meeting for Bureau employees.

5.  The September 2003 verbal warning and memo-to-file concerning Plaintiff's comments about former Bureau employee Danny MacDougal.

6.  The December 2003 comments by Michelle Tate regarding Plaintiff during a meeting with Wheeler and other Bureau officials.

7.  May 2003 denial of Plaintiff's application for CPR instructor training.

8.  The August 2004 denial of Plaintiff's request for IT training.

9.      Wheeler's prohibiting Plaintiff from working overtime on shifts

supervised by Rogers from January 4, 2004 until late February 2004.

10.     The January 4, 2004 reassignment of Plaintiff from the day shift to the

night shift.

The March 7 Order grouped the alleged employment actions into three categories, which the Court applies in this Order.  The verbal warnings, memos-to-file, verbal inquiries, and CIRs constitute "negative performance commentary." Actions 1 through 6 listed above fall into that grouping.  Actions 7 through 9 fall under the Court's "denials of training or additional opportunities for additional compensation" grouping.  Action 10 is grouped as an "alleged ultimate employment action."

## 1.      Negative Performance Commentary

The March 7 Order found that the negative performance commentary against Plaintiff did not constitute "adverse employment actions" because, according to Stavropoulos and Akins, they did not impact important conditions of employment. The Court held that for a "reprimand" to be an adverse employment action, it must have "negatively impact[ed] an important condition of Plaintiff's job."  Order [57] at 16.

On reconsideration, the Court now applies the Burlington standard that an "adverse employment action" is an action which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 126 S. Ct. at 2415.  In the First Amendment context, the Burlington standard requires the Court to inquire whether a reasonable worker would be dissuaded from engaging in protected speech activities.  This is plainly a lower standard than Stavropoulos' "important condition of employment" test.  Thus the question now is whether the complained-of negative performance commentary would have had the effect of dissuading a reasonable worker from engaging in constitutionally-protected speech.

The Court determines that the February 4, 2003 CIR, the February 14, 2003 letter from Flynn, the March 15, 2003 CIR, and the September 2003 verbal warning and memo-to-file regarding Plaintiff's comments about former employee Danny MacDougal (items 1 through 3 and 5 listed above) were "adverse employment actions" under Burlington.  Plaintiff has alleged that negative performance commentary such as memos-to-file and CIRs are part of a progressive discipline system in place at the Bureau.  An employee who receives a large amount of negative performance commentary is less likely to receive promotions

or annual salary increases.  Although it is undisputed that Plaintiff did not, in fact, receive a lower salary or demotion as a result of these negative commentaries, the Court's inquiry focuses not on whether Plaintiff was ultimately harmed with respect to her employment but instead on how a reasonable employee would perceive the negative commentaries.

The Court finds that negative performance commentary might well dissuade a reasonable worker from engaging in protected speech.  An employee faced with the choice between speaking out as a citizen on a matter of public concern, thus incurring verbal and written warnings from his superiors, or remaining silent for fear of criticism, might well choose to remain silent.  If the employee did so, he would be forgoing his right to engage in protected speech.  This is the sort of behavior a First Amendment retaliation action seeks to remedy.  Under the Supreme Court's recent standard in <u>Burlington</u>, the Court finds that the negative performance commentary against Plaintiff qualifies as adverse employment actions within the meaning of a First Amendment retaliation claim.

The Court also determines that the September 2003 verbal warnings and memo-to-file concerning Plaintiff's comments about former employee Danny MacDougal were adverse employment actions.  The undisputed facts establish that

Plaintiff made certain negative comments about Mr. MacDougal which he eventually heard.  Defs.' Statement of Material Facts [27] at ¶¶ 79-83; Pl.'s Resp. to Defs.' Statement of Material Facts [35] at ¶¶ 79-83.  Mr. MacDougal later wrote an incendiary email to Plaintiff about those comments.  Id. ¶ 86; Pl.'s Resp. to Defs.' Mot. for Summ. J. [35] at Exh. 12.  Plaintiff alleges that she received verbal warnings about the comments and a memo-to-file was written because of them.  A reasonable employee may well be dissuaded from making protected speech because of explicit verbal reprimands and memos-to-file.

The Court determines that the actions listed in items 4 and 6 did not constitute adverse employment actions.  The March 2003 inquiries of other employees regarding the Thompson Letter served the sole purpose of apprising Bureau management of the facts and views of Plaintiff's transmission of the Thompson Letter.  See Pl.'s Statement of Material Facts [35] at ¶¶ 40-41. Following these inquiries, Plaintiff alleges the Bureau and its employees took several retaliatory acts against her.  The Court concludes that the Bureau's informal inquiries into the circumstances of the Thompson Letter were not "adverse employment actions."  They were merely information gathering activities. The Court further determines that a reasonable employee would not be dissuaded

from making protected speech simply because her employer informally

investigated if and why a certain speech was made.

The Court also determines that Michelle Tate's December 2003 comments

regarding Plaintiff did not constitute adverse employment actions.  See Pl.'s

Statement of Material Facts [35] at ¶ 100.  Plaintiff alleges that Ms. Tate, a training

coordinator, id. ¶ 88, called her a liar and an awful employee during a December

2003 meeting with Wheeler.  The Court concludes that a reasonable employee

would not have been deterred from writing the Thompson Letter because of Ms.

Tate's comments.  Plaintiff does not connect the Thompson Letter with Ms. Tate's

comment, and the Court is skeptical that a connection existed given the lengthy

time between the two events.  Id. at ¶ 100.  Ms. Tate did not supervise Plaintiff and

was not in Plaintiff's chain of command.  Ms. Tate's comments were not those of

the Bureau, and a reasonable employee would not be dissuaded from writing the

Thompson Letter because of them.

Having found that actions 1 through 3 and 5 constitute adverse employment

actions, the Court must now consider whether Plaintiff has stated a *prima*

*facie* case.  To state a *prima facie* case of First Amendment retaliation, a plaintiff

must show that (1) she spoke "as a citizen" on speech that can fairly be categorized

as a matter of public concern, D'Angelo, 497 F.3d at 1209; (2) her interests as a citizen outweigh the interests of her employer, and (3) the speech played a substantial or motivating role in the government's decision to take an adverse employment action.  Akins, 420 F.3d at 1303; Pickering v. Bd. of Educ., 391 U.S. 563 (1968).  "If any employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech." Cook v. Gwinnett County Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005); accord Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).  "The first two steps are questions of law; the final two steps are 'questions of fact designed to determine whether the alleged employment action was in retaliation for protected speech.'"  Cook, 414 F.3d at 1318 (quoting Anderson v. Burke County, Ga., 239 F.3d 1216, 1219-20 (11th Cir. 2001)).

The Court determines that Plaintiff spoke through the Thompson Letter as a citizen on a matter of public concern.  The Defendants concede this element of the Pickering analysis.  See Order [57] at 27; Defs.' Br. Opposing Pl.'s Mot. to Reopen Discovery [91] at 2.

As to the February and March 2003 CIRs and the February 2003 letter from Flynn, the Court determines that Plaintiff has not demonstrated that her free speech interests outweighed Defendants' interest in "effective and efficient fulfillment of its responsibilities."  Cook, 414 F.3d at 1318.  When evaluating the government's interest in the efficient provision of public services, the court considers "(1) whether the *speech at issue* impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made."  Bryson v. City of Waycross, 888 F.2d 1562, 1567 (11th Cir. 1989).  If an employee's speech is outweighed by the government's interest in effectively fulfilling its functions, then the plaintiff cannot make out her claim of retaliation.

The Court has reconsidered in detail each of the February 2003 CIR, February 2003 letter from Flynn, and the March 2003 CIR, see Pl.'s Resp. to Defs.' Mot. for Summ. J. [35] at Exhs. 3, 69, 24, the parties' statements of material fact [27 & 35], and applicable deposition testimony.  On reconsideration, the Court reiterates its prior conclusion that the CIRs and February 2003 letter were not impermissible governmental responses to the Thompson Letter in light of the Bureau's interest in efficient and effective services.  As the Court had already

determined in connection with the February 2003 CIR, "Defendants' response to Plaintiff's letter acknowledged Plaintiff's concerns and stated their intention to work to correct any staffing issues.  They did not prohibit Plaintiff from voicing her concerns, nor did they punish her for the content of her speech.  Plaintiff merely was advised that she should pursue such communication in a manner that complied with the Bureau's Chain of Command Policy."  Order [57] at 27-28 n.6.[5]

As to the September 2003 incident regarding Danny MacDougal, the Court determines that Plaintiff has not presented any facts showing that the Thompson Letter played a substantial or motivating role in the Defendants' decision to verbally reprimand her and send a memo-to-file.  The Court examines the record as a whole to determine whether the plaintiff has met the burden of showing that speech was a substantial and motivating factor in an employment action, Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1291 (11th Cir. 2000), and there is no single standard for determining if an employee has met this burden.  Beckwith v. City of Daytona Beach Shores, Fla., 58 F.3d 1554, 1564 (11th Cir. 1995).  The Court considers several factors, including the temporal proximity of the action and the

---

[5]  It is inconceivable that an employer would not respond to an employee who chooses to make public an issue concerning the work of a 911 call center that the employee did not first vet with her superiors.

protected speech.  <u>Stanley</u>, 219 F.3d at 1291 n.20.  The undisputed factual record

makes clear that Plaintiff made negative public comments about a former employee

and was reprimanded for those comments.  Given the lengthy temporal proximity

between the reprimand and the Thompson Letter, it is less likely that the Letter was

a substantial and motivating factor in the reprimand.  Additionally, Plaintiff admits

that she made negative comments in public about MacDougal.  For those reasons,

the Court determines that the Thompson Letter did not play a substantial or

motivating role in causing the September 2003 verbal and written reprimands.  It

appears, instead, that Plaintiff's independent conduct caused the reprimands.

On reconsideration, the Court determines that Plaintiff has not shown a

*prima facie* case of retaliation on the basis of alleged instances of negative

performance commentary.

### 2.      Denials of Training or Additional Opportunities for Additional Compensation

The Court originally determined that the May 2003 denial of Plaintiff's

request to take a CPR instructor course was not an "adverse employment action."

On reconsideration, the Court reiterates its prior conclusion.

It is undisputed that Plaintiff appealed Rogers' initial denial of her application for CPR instructor training and that Flynn ultimately approved the training at the end of May 2003.  Pl.'s Statement of Material Facts ¶ 47.  The Court made clear in its prior order that an action that is rescinded before an employee suffers tangible harm is not an adverse employment action.  Pennington v. City of Huntsville, Ala., 261 F.3d 1262, 1267 (11th Cir. 2001) ("[T]he decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action.").  Plaintiff's training request was ultimately approved, and she did not suffer an adverse employment action merely because of the initial denial.

The Court determined originally that the August 2004 denial of Plaintiff's application for IT training was not an adverse employment action because it did not affect an important condition of her employment.  The standard from Burlington asks only if a reasonable employee would be dissuaded from making protected speech if she knew she would be denied the opportunity for IT training.  IT training apparently was among the several types of training Plaintiff could use to advance her career, and denial of that training in retaliation for protected speech might well dissuade a reasonable employee from making the speech.

-27-

Although Plaintiff has shown that the denial of IT training was an adverse employment action, she fails to make a *prima facie* case of retaliation because she does not sufficiently show that the Thompson Letter played a substantial or motivating role in the denial of IT training.  The Bureau has produced a legitimate reason for the denial of IT training – that the Bureau planned to implement a new computer operated dispatch system during the same time frame as the IT training and that no employees were permitted to attend that IT training.  Defs.' Statement of Material Facts at ¶ 149.  It is undisputed that Wheeler sent a Bureau-wide email stating that policy.  Id.; Pl.'s Statement of Material Facts at ¶ 117.  Plaintiff must show that the Thompson Letter played a substantial role in the decision to deny her IT training, and she has not carried this burden.  The denial of IT training undisputably applied to all Bureau employees, and Defendants contended then and now that the denial was based on scheduling conflicts between the training and implementation of a Bureau-wide dispatch system.  Plaintiff has not shown that the Defendants' actions were based on her speech.

The Court also determined that the January-February 2004 prohibition preventing Plaintiff from working an overtime shift supervised by Rogers was not an "adverse employment action."  The Court determines on reconsideration that it

was an "adverse employment action."  It is undisputed that from January 4, 2004 to February 29, 2004, Wheeler prohibited Plaintiff from working on overtime shifts supervised by Rogers.  The consequence of this was that Plaintiff was effectively prevented from working overtime shifts.  Pl.'s Statement of Material Facts at ¶ 103.  Denials of an opportunity to work overtime shifts are generally deemed adverse employment actions since they directly affect an employee's compensation.  Bass v. Board of County Comm'rs., Orange County, Fla., 256 F.3d 1095, 1118 (11th Cir. 2001).  The Court had originally determined that this action was not adverse because it did not prevent Plaintiff from working overtime, but merely from working the overtime shift of her choice.  Order [57] at 20.  On reconsideration under the lower Burlington standard, the Court determines that the prohibition on working overtime might well have dissuaded a reasonable worker in Plaintiff's position from making protected speech.

Plaintiff has also satisfactorily shown a *prima facie* case of retaliation based on the overtime prohibition.  Defendants assert that their non-retaliatory reason for prohibiting Plaintiff from working overtime shifts supervised by Rogers was that Plaintiff and Rogers could no longer work together effectively.  Defs.' Statement of Material Facts at ¶¶ 135-36.  Even assuming that is true, Plaintiff has shown

-29-

several facts indicating that sour relations between her and Rogers were, in fact, based on the Defendants' reactions to the Thompson Letter.  The Court finds disputed questions of fact over whether the Thompson Letter caused the prohibition on overtime hours.  On reconsideration, the Court denies Defendants' motion for summary judgment on the January-February 2004 prohibition of Plaintiff working on certain overtime shifts.

### 3.      Alleged Ultimate Employment Action

Finally, Plaintiff seeks reconsideration of the Court's determination that her shift change in January 2004 from the day to night shift was not an adverse employment action.  On reconsideration, the Court concludes that Plaintiff has stated a *prima facie* case of retaliation based on the shift change.

The Court looks only to whether a reasonable employee in Plaintiff's position might be dissuaded from making protected speech because of the shift change.  Plaintiff did not show that the shift change resulted in lower pay or decrease in eligibility for advancement, yet the Court is mindful of the practical realities of transitioning from a day shift to a night shift.  Although some employees might prefer night work, many employees, including Plaintiff who

cared for young children, would not.  A reasonable employee might well be dissuaded from speaking if she knew she would be forced to work only at night.

The Defendants' articulated reason for the change in shifts was that Plaintiff could not work effectively with Rogers.  For the same reasons as already explained above, it appears Plaintiff's relations with Rogers were directly related to her speech activities.  A disputed question of fact exists over whether the shift change was a legitimate, non-retaliatory action or whether it was substantially caused by retaliation over the Thompson Letter.  Defendants' motion for summary judgment is denied regarding Plaintiff's January 2004 reassignment from the day shift to the night shift.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration [88] is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that on reconsideration, Defendants' Motion for Summary Judgment [27] is **GRANTED IN PART** and **DENIED IN PART**.  The Court affirms its prior ruling that Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's allegations related to the

February and March 2003 CIRs, the February 2003 letter from Flynn, the March 2003 inquiries to other employees, the May 2003 denial of Plaintiff's application for CPR training, the September 2003 verbal and written warnings regarding Danny MacDougal, Michelle Tate's December 2003 comments, and the August 2004 denial of Plaintiff's request for IT training.  On reconsideration, Defendants' Motion for Summary Judgment is **DENIED** with respect to Plaintiff's allegations related to her January 2004 reassignment from the day shift to the night shift and the 2004 prohibition preventing Plaintiff from working certain overtime hours.

   **IT IS HEREBY FURTHER ORDERED** that Plaintiff's Motion to Reopen Discovery [89] is **DENIED**.

   **IT IS HEREBY FURTHER ORDERED** that, full discovery having already been conducted, the parties shall not be permitted to take any further discovery in this case.  The deadlines contained in the Court's Order Setting Trial [76] remain in effect, and the dates for pretrial conference and trial, as indicated on the Court's electronic docket, also remain in effect.

**SO ORDERED** this 8th day of February 2008.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE